[No. B007459. Second Dist., Div. Four. June 11, 1987.]

ORIENT HANDEL et al., Plaintiffs, Cross-defendants and Appellants, v. UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant, Cross-complainant and Respondent.

## COUNSEL

Selvin & Weiner, Paul P. Selvin and Beryl Weiner for Plaintiffs, Cross-defendants and Appellants.

Parkinson, Wolf, Lazar & Leo, Richard B. Wolf and Betty S. Chain for Defendant, Cross-complainant and Respondent.

## OPINION

McCLOSKY, J. —Orient Handel, a corporation, and Nassir Shokrian and Lotfollah Shokrian, as individuals and former partners in a partnership that operated a rug retailing business known as Orient Handel (appellants) appeal from the judgment rendered against them and in favor of United States Fidelity & Guaranty Company (respondent or USF & G) for insurance fraud.[1]

---

[1] The jury, by special verdict, actually found compensatory damages of $30,535.54, and punitive damages against Orient Handel in the sum of $52,946.40, against Nassir Shokrian in the sum of $471,519, and against Lotfollah Shokrian in the sum of $471,519. The trial judge then ordered judgment entered on the special verdict "against Orient Handel, plaintiff" and erroneously "ordered, adjudged and decreed that said DEFENDANT [USF & G] have and recover from said PLAINTIFF the sum of $1,026,519.54" In view of our disposition, this clerical error will be of no consequence. At the request of all parties, we take judicial notice that by its minute order of January 10, 1985, the trial court corrected this error and ordered entered a judgment nunc pro tunc to May 25, 1983, that USF & G have and recover "Judgment as follows: From plaintiff and cross-defendant Orient Handel, the sum of $83,481.54; from cross-defendant Nassir Shokrian, the sum of $471,519.00; from cross-defendant Lotfollah Shokrian, the sum of $471,519.00; with interest thereon at the rate of 7% per annum from

The judgment was entered on special verdicts after a jury trial on Orient Handel's complaint for breach of the duty of good faith and fair dealing, breach of contract, fraud, violation of Insurance Code section 790.03, and intentional interference with protected property rights, and on a cross-complaint brought by respondent against appellants and others for fraud.

We reverse the judgment.

## CONTENTIONS

Appellants raise the following contentions: I. Respondent did not actually or justifiably rely on appellants' alleged fraud and, therefore, suffered no damages as a proximate result of such fraud; II.The judgment awarding actual and punitive damages in this case is contrary to the Insurance Code and public policy, based on an improper standard for calculating the amount of punitive damages, and was so grossly disproportionate as to raise a presumption that it was the result of passion or prejudice and must be reversed;[2] III. The jury verdict on "Phase III" of trial was fatally infected by instructional and evidentiary errors, and the trial court erred by allowing respondent both to open and to close argument to the jury on "Phase II."

## FACTS

The allegations of both the complaint and cross-complaint are based on the parties' conduct in making and handling a burglary and theft loss claim under a fire insurance policy issued by respondent. The burglary and theft occurred at the premises of Orient Handel, a retailer of oriental rugs, on February 12, 1978.

The burglars apparently gained entry to Orient Handel by breaking a hole (no larger than about 14½ inches wide by 13 inches high) through a brick wall. Initially, an estimated 15 rugs valued at about $153,000 were reported stolen, but the reporting party at Orient Handel indicated that an accurate number could not be given until an inventory could be conducted.

the date of the verdict until paid together with costs and disbursements to be submitted by counsel."

Although appellants purport to appeal from the entire judgment, the arguments in their brief concern only that portion of the judgment awarding damages against them for fraud under the cross-complaint. Accordingly, we deem the appeal from that portion of the judgment rendered on the complaint to be abandoned.

[2] Respondent challenges appellants' right to raise the issue of excessive damages on appeal because their counsel did not raise it by a motion for new trial. At respondent's request, we take judicial notice of the fact of appellants' malpractice action against their trial counsel based on alleged acts and omissions in his handling of this matter. (Evid. Code, § 452, subd. (d)(1).) Appellants' appellate counsel did not represent them at the trial.

After checking its inventory, Orient Handel then provided police and respondent with a list of missing rugs that listed a total loss of 109 rugs at a cost of $471,519.

A number of facts and circumstances surrounding the burglary led investigating sheriff's deputies and respondent's adjusters and investigators to suspect from the outset of their investigation that the allegedly stolen rugs were not removed through the small brick hole. These were the small size both of the hole in the brick wall and of the adjoining restroom where the hole was thought to have been made, the evenly distributed and undisturbed mortar dust on the restroom floor under the hole coupled with the absence of fingerprints or footprints inside the restroom, the absence of rug fibers in the hole and the still-sharp brick edges lining the hole, the fortuitous positioning of the hole between two rugs hanging on the wall inside Orient Handel and the lack of any "great disorder in the rugs" inside Orient Handel. Another fact supporting respondent's suspicion about the burglary was that the "polling tape" from the burglar alarm monitoring Orient Handel indicated no more than 28 minutes could have elapsed during the entire course of the burglary, with 24 of those minutes occurring between 1:24 a.m. and 1:48 a.m., and another four minutes recorded between 3:10 a.m. and 3:14 a.m. Of the entire 28 minutes, however, the alarm records only indicated actual activity inside the premises for a total of 10 minutes. A time and motion study that was later conducted to simulate the burglary by removal of rugs through the hole in the wall concluded that even had there been 10 "burglars" working, removal of 109 rugs through the hole would have taken much longer than 10 minutes.

Appellants and respondent both hired independent claims adjusters to investigate and document the fact and extent of the claimed loss. The adjuster retained by appellants prepared a formal proof of loss for the claim, which was submitted to respondent. Respondent's adjuster found the inventory records and purchase invoices inadequate, incomplete or nonexistent for the rugs listed in the proof of loss, leading that adjuster to conclude that it would be "almost impossible for the insured to factually determining his loss, if any." Subsequently, respondent hired accountants, appraisers and investigators to examine Orient Handel's records, including an inventory book, purchase book, tax returns, invoices, and financial statements. In addition, respondent had Nassir Shokrian, Lotfollah Shokrian and others examined under oath.

Respondent never expressly denied or paid the claim.

Appellants filed their lawsuit to recover the policy benefits and other damages, and respondent filed its cross-complaint for fraud, alleging appel-

lants' misrepresentation and concealment as to the fact that a burglary and theft occurred and as to the amount of their loss. Both sides sought punitive damages. The jury trial was conducted in three phases with a special verdict following each phase. "Phase I" concerned the special verdict question, "Was there a burglary followed by a theft of rugs on or about February 12, 1978, at the premises of Orient Handel at 525 La Cienega in Los Angeles?"; 10 jurors answered this question "Yes" and 2 answered it "No." "Phase II," in which no additional evidence was presented, resulted in the following special verdict: "[I]n respect to their claim of loss from the burglary of February 12, 1978, did Orient Handel or any of its owners willfully and with an intent to defraud United States Fidelity and Guaranty do either or all of the following: (a) Misrepresent or conceal any material fact or circumstance of the claim; or (b) Engage in any false swearing; or (c) Engage in any fraud in connection with the claim? Ten jurors answered this question "Yes" and two answered it "No." At that point, the court ordered judgment entered in favor of respondent and against appellant Orient Handel on its complaint.

"Phase III" involved presentation of evidence and 13 days of deliberation, after which the jury reached the following special verdict: "1. What were the actual monetary damages, if any, suffered by United States Fidelity and Guaranty as a proximate result of fraud of Orient Handel or its owners? $30,535.54 2. If actual monetary damages are found in question I above, you may go on to answer the following: Did Orient Handel or its owners act with fraud, malice or oppression in the claim of loss? Yes 9 No 3 If actual monetary damages are found in question I above *and* you answer yes to question 2 above, you may go on to answer the following: Do you believe that punitive damages should be assessed against Orient Handel or its owners? Yes 9 and in the amount of $52,946.40 against Orient Handel $471,519.00 against Nassir Shokrian $471,519.00 against Lotfollah Shokrian No 3."

Judgment was entered on the special verdicts, and this appeal followed.

### DISCUSSION

### I. *Proof of Fraud*

Our analysis begins with the fraud cause of action alleged in respondent's cross-complaint for damages. The gravamen of the cross-complaint alleges that appellants had conspired to defraud respondent under the insurance policy in staging a burglary by breaking a hole in the wall of the insured premises and falsely reporting that they had suffered a loss of $471,519 for the purpose of inducing respondent to investigate the claim and pay policy

benefits to them. It further alleged that appellants intended respondent to rely on their false representations and pay funds to induce respondent to investigate and pay the claim. It further alleged that respondent relied on those false representations and on appellant's concealment of material facts to pay investigators, experts, attorneys and others to determine whether or not Orient Handel had, in fact, suffered a loss compensable under the policy.[3]

■ "The elements of fraud, which give rise to the tort action for deceit, are (1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of falsity (or 'scienter'); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. [Citations.]" (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 446, p. 2711; see Civ. Code, §§ 1709, 1710.)

## A. *Subject of Misrepresentation*

Generally, the misrepresentation must be a material and knowingly false representation of fact. (*Hobart* v. *Hobart Estate Co.* (1945) 26 Cal.2d 412, 422 [159 P.2d 958]; *Block* v. *Tobin* (1975) 45 Cal.App.3d 214, 219 [119 Cal.Rptr. 288]; 4 Witkin, *supra,* § 447, p. 2711.) As seen from the allegations of its cross-complaint, respondent alleged appellants' material misrepresentations of two facts in connection with their claim for policy benefits: (1) the fact that a burglary loss and theft had occurred; and (2) the amount of that loss. In its special verdict, the jury expressly found that there was a

---

[3] The relevant portions of the cross-complaint read as follows: "6. On or before February 12, 1978, cross-defendants conspired together to stage a burglary for the purpose of obtaining funds from cross-complainant.

"7. On or before February 12, 1978, cross-defendants broke a hole in the wall of their premises, 525 North La Cienega Boulevard, Los Angeles, California 90048, and took other steps to make it appear as if there had been a burglary in said premises.

"8. On or about Feburary 14, 1978, cross-defendants falsely reported to cross-complainant that cross-defendant Orient Handel had suffered a burglary loss. On or about February 28, 1978, cross-defendant falsely reported that they had suffered a loss of $471,519 in the alleged burglary.

"9. In falsely stating to cross-complainant that cross-defendant Orient Handel had suffered a burglary loss and that the extent of the loss was $471,519, cross-defendants knew that said representations were false, and intended to defraud and deceive cross-complainant and to induce it to investigate the claim of burglary and to pay funds to cross-complainant Orient Handel.

"10. Cross-complainant relied on said false representations, and, as a proximate result of the aforesaid wrongful conduct of cross-defe[n]dants, cross-complainant investigated the claim of burglary, retaining investigators, experts, attorneys, and others to determine whether or not cross-defendant Orient Handel had suffered a loss compensable under the above-referenced insurance policy and the extent of that loss, if any. Cross-complainant seeks recovery of funds paid for said investigation, to and including August 24, 1979, the date on which it was served with the complaint in the instant action."

burglary and theft of rugs from the premises of Orient Handel on or about February 12, 1978. Respondent does not contest the sufficiency of the evidence to support that special verdict and does not on appeal contest the jury's finding that there was a burglary loss and theft. Thus, the only misrepresentation that could have been the basis for the jury's finding of fraud was as to the amount of the loss claimed by appellants and as to what was stolen. The cross-complaint alleged that appellants misrepresented the amount of their loss to be $471,519, and the evidence at trial apparently proved that appellants knew that the amount claimed was false.

### B. *Insufficient Evidence of Reliance*

Assuming arguendo, without conceding, that they intentionally misrepresented or concealed material facts as to the nature and extent of their losses resulting from the burglary and theft, appellants contend that there was still insufficient evidence presented at trial to support the jury's finding that respondent actually and justifiably relied on such misrepresentations or concealments and that such misrepresentations or concealments constituted a proximate cause of respondent's damage. Appellants might well have conceded that they intentionally misrepresented and concealed material facts as to the nature and extent of their loss, for the record is replete with substantial evidence of such misrepresentation and concealment by them.

In order, however, to plead and prove a fraud cause of action, "[i]t must [also] be shown that the plaintiff *actually relied* upon the misrepresentation .... [Citations.] [¶] If the statements did not come to the knowledge of the plaintiff until *after* he acted, obviously he cannot claim reliance upon them. [Citation.]" (4 Witkin, Summary of Cal. Law, *supra,* at p. 2732, first italics added.) Additionally, "If the plaintiff having access to the necessary information actually makes an independent investigation which the defendant does not hinder, he will be charged with knowledge of the facts which reasonable diligence would have disclosed, and he cannot claim reliance upon the representations. [Citations.]" (*Id.,* at p. 2733.) "A defrauded person, however, is not barred from maintaining an action merely because he commenced an investigation if it was incomplete or abandoned before discovery of the falsity, particularly if the defendant has a superior knowledge of the facts, or if it is difficult for the plaintiff to ascertain all the facts or he is not competent to judge the facts without expert assistance. [Citations.]" (*Hobart* v. *Hobart Estate Co., supra,* 26 Cal.2d at p. 435; accord *Elkind* v. *Woodward* (1957) 152 Cal.App.2d 170, 176 [313 P.2d 66].)

The evidence adduced at trial here demonstrated that within two days after the February 12th burglary of appellants' premises, and on the same

day that respondent received the property loss notice from appellants' insurance agent, respondent assigned the claim to an independent adjuster, Harman & Company, for investigation. Mr. Harman of that firm immediately inspected the appellants' premises, interviewed the insureds and concluded that the burglary could not have occurred as alleged. He communicated his suspicions concerning the illegitimacy of the claimed burglary to respondent's in-house senior claims examiner, Mrs. Johnson, who had assigned the claim to Harman & Company. Mrs. Johnson testified that assignment of a property loss claim to an independent adjuster was the respondent's normal practice.

These facts, coupled with the fact that a list identifying the number of the rugs alleged to have been stolen and their alleged value was not prepared by appellants until February 24, some 10 or 12 days later, establish that Harman & Company could not have been hired in reliance on the amount of loss misrepresented by appellants' claim, as respondent did not receive that figure until sometime after February 24. By that time, Mr. Harman had already concluded that the burglary could not have occurred as alleged and had passed along that conclusion to respondent's in-house examiner, Mrs. Johnson. Even after Mrs. Johnson learned that the sheriff's department, which investigated the reported burglary, doubted that the burglary was legitimate, respondent continued to investigate the claim because, as Mrs. Johnson explained during her testimony: "[A] circumstance can seem very suspicious and can seem very questionable. However, we had an insured that had purchased a policy from us. It was our responsibility to continue to investigate that claim until such time as it were *proven* to us that he was *guilty of fraud*. And by that I mean *if he were arrested and convicted*. Then I would have ceased my investigation, But *the instructions were no matter what the suspicions are, this claim is to be handled efficiently and continue on investigating it*." (Italics added.)

That respondent suspected appellants of insurance fraud from almost the inception of its investigation is obvious. It is further shown, by the facts, among other things, that respondent shared the results of its continuing investigation with an investigative agency for the insurance industry, the Insurance Crime Prevention Institute, from almost the inception of that investigation. Additionally, the testimony of Mrs. Johnson's supervisor, David Stolls, who was USF & G's assistant superintendent of claims, contains many references to respondent's initial suspicions of fraud, including Mr. Stolls' statement that at least one of the reasons he decided not to make an offer to settle appellants' claim as early as July 1978, was because he "felt the claim was fraudulent."

The evidence irrefutably establishes that respondent's investigation of appellants' claim did not depend on the legitimacy of that claim or on

respondent's perception of the legitimacy of that claim or its reliance on appellants' false representations on concealments of material facts. ■ Indeed, where an insurance company refrains from paying a claim made by one of its insureds, that insurer has a duty to make an objective investigation of that claim. That duty exists independent of its insured's duty to it.

■ Respondent cites no evidence in the record indicating that its decision to investigate or the extent of its investigation depended in any measure on the amount of the loss claimed. To the contrary, all indications are that it disbelieved the occurrence of a true burglary or theft and the amount of the purported loss almost from the outset of its receipt of notice. There was no substantial evidence supporting the element of actual and justifiable reliance by respondent on any misrepresentations or concealment by appellants as to the amount of the loss in investigating the claim. The investigation here was neither abandoned before discovery of the misrepresentations nor so incomplete that the misrepresentations remained undiscovered. (See *Elkind* v. *Woodward, supra,* 152 Cal.App.2d 170, 176.) Ultimately, the investigation resulted in discovery of the suspected misrepresentations and respondent made no payment of the claim. However, in the absence of proof that respondent actually and justifiably relied on the misrepresented amount of loss in investigating the claim, the claim itself having been proven to be based on an actual burglary and theft from the insured premises, respondent may not recover the costs of that investigation from its insureds as damages for fraud.

## II. *Other Available Remedies*

In determining that respondent failed to prove entitlement to damages for fraud here, we do not hold that an insured is exempt from liability in damages, including punitive damages, to an insurer for wrongful conduct under, or in connection with, a policy an insured has in force with an insurer. ■ Contrary to appellants' assertions, it has long been the rule in this state "that the rights of rescission which the Insurance Code recognizes and limits are not in derogation of other remedial rights which are recognized and implemented by other provisions of law, including but not limited to sections 1572, 1709, 1710, 3281, 3300, and 3333 of the Civil Code." (*De Campos* v. *State Comp. Ins. Fund* (1954) 122 Cal.App.2d 519, 529 [265 P.2d 617]; see *Perovich* v. *Glens Falls Insurance Company* (9th Cir. 1968) 401 F.2d 145, 147 [recognizing insurer's right to restitution as remedy for insured's fraud].)

■ Moreover, our Supreme Court has recognized that "a duty of good faith and fair dealing in an insurance policy is a two-way street, running

from the insured to his insurer as well as vice versa [citations]." *(Commercial Union Assurance Companies* v. *Safeway Stores, Inc.* (1980) 26 Cal.3d 912, 918 [164 Cal.Rptr. 709, 610 P.2d 1038]; accord *California Casualty Gen. Ins. Co.* v. *Superior Court* (1985) 173 Cal.App.3d 274, 283 [218 Cal.Rptr. 817].) "[W]hat that duty embraces is dependent upon the nature of the bargain struck between the insurer and the insured and the legitimate expectations of the parties which arise from the contract." *(Commercial Union Assurance Companies* v. *Safeway Stores, Inc., supra,* 26 Cal.3d at p. 918; accord *California Casualty Gen. Ins. Co.* v. *Superior Court, supra,* 173 Cal.App.3d at p. 283.) This reciprocal duty has been deemed sufficient in an appropriate case to support the insurer's affirmative defense of comparative bad faith in an action brought by the insured. *(California Casualty Gen. Ins. Co.* v. *Superior Court, supra,* 173 Cal.App.3d at pp. 283-284.) Whether it is a sufficiently sound basis under the facts presented here to support an independent "reverse bad faith" action by the insurer against its insured is a question not before us as it was neither pled nor was the case tried on that theory. We, therefore, need not and do not reach that issue in this matter.

■ Although not a cause of action, "[p]unitive or exemplary damages are remedies available to a party who can plead and prove the facts and circumstances set forth in Civil Code section 3294, the cases interpreting this code section, or by other statutory authority. 'Punitive damages are merely incident to a cause of action, and can never constitute the basis thereof.' [Citation.]" *(Hilliard* v. *A. H. Robins Co.* (1983) 148 Cal.App.3d 374, 391 [196 Cal.Rptr. 117], fns. omitted.) The proof requirements nevertheless may depend upon the theory of recovery. ■ "Fraud alone is an adequate ground for awarding punitive damages. . . ." *(Horn* v. *Guaranty Chevrolet Motors* (1969) 270 Cal.App.2d 477, 484 [75 Cal.Rptr. 871].) Here, of course, respondent's award of punitive damages falls with its failure to prove justifiable reliance, an essential element of fraud.

In view of the dispositive nature of our foregoing conclusions, we find it unnecessary to consider appellants' remaining contentions except for those concerning alleged instructional, evidentiary and procedural errors, which we consider necessary for the purpose of providing guidance to the trial court in the event of retrial.

III. *Alleged Instructional, Evidentiary and Procedural Errors*

■ Appellants do not contend that the jury was improperly instructed as to the applicable law regarding what is and what is not fraud; rather, they contend that the trial court erred in refusing to give the following proposed special instruction: "Mere overvaluation does not void a claim on

a fire policy under a fraud and false swearing provision but there must be deliberate overstatement with intent to deceive. An insured's overvaluing a fire loss due to mere mistake or error of judgment will not defeat recovery."

The trial court determined that the proposed instruction contained a "kernel of truth ... but not quite stated that way." Considering it to be a "problem instruction," the trial court, not appellants' counsel, rewrote it but apparently still was not satisfied. In support of the proposed instruction, appellants' counsel argued: "At least 15 times in instructions we have talked about what is fraud. Never once, because of this omission by [respondent's counsel] have we indicated what is not fraud, and it is a very important instruction." The court then decided to refuse the instruction but encouraged counsel to argue its substance. This was not error.

■■■ "The general rule is that 'it is the responsibility of the trial court to instruct the jury on the controlling legal principles applicable to a case....' [Citation.]" (*Wank v. Richman & Garrett* (1985) 165 Cal.App.3d 1103, 1113 [211 Cal.Rptr. 919].) The parties are " 'entitled to have every theory of [their] case submitted to the jury in accordance with the evidence [citations], and the trial court must, when requested, instruct on all vital issues involved.' " However, " '... an erroneous, misleading or incomplete instruction may be refused by the court, and ... the latter is under no duty to modify such instruction or give others in its place, " *'as long as the jury is properly instructed as to the law of the case.'* " [Citations.]' " (*Ibid.*)

"That general rule in practical application should not require a party to rely on abstract generalities where the abstract generalities are inadequate to cover the parties' theories of the case, but should result in instructing the jury on the vital issues of the particular case. [Citation.]" (*Ibid.*)

■■■ Here, the vital issue of "what is fraud" was addressed "at least 15 times in instructions" by appellants' counsel's own estimate, and counsel proffered his instruction on what is *not* fraud in a form that appeared argumentative, incomplete and slanted. We also note that, encouraged by the trial court to do so, appellants' counsel argued the substance of his proposed instruction to the jury as part of closing argument.

To the extent that modification of appellants' proposed instruction based on evidence adduced at trial would have cured its argumentative and slanted nature, appellants' counsel was in the best position to make the necessary changes but did not do so. As we have previously observed, "It would not serve the impartial role of the trial judge to have made such major changes, particularly where the BAJI instructions adequately, if not ideally, stated

'the principles of law applicable to the key factual issue presented.' [Citation.]" (*Wank* v. *Richman & Garrett, supra,* 165 Cal.App.3d at p. 1114.)

■ Appellants' contention that the trial court erred in failing to instruct on the meaning or definition of a "material fact," as that term is used in the fraud instructions, is without merit. Appellants concede that they did not request such an instruction, nor was there any ambiguity or argument as to whether the very substantial amount of the claimed loss and its component parts constituted a material fact. "In order to complain of failure to instruct on a particular issue, the aggrieved party must request the specific proper instruction [citation.]." (*Spahn* v. *Guild Industries Corp.* (1979) 94 Cal.App.3d 143, 160 [156 Cal.Rptr. 375]; see *Fish* v. *Los Angeles Dodgers Baseball Club* (1976) 56 Cal.App.3d 620, 640 [128 Cal.Rptr. 807, 91 A.L.R.3d 1].)

■ We next consider appellants' contention that the trial court erred in commenting during instruction of the jury as follows: "It is my opinion, after my evaluation of the evidence, that the insurance company's requests for documentation and sworn examinations were reasonable under the circumstances herein." The court followed its comments immediately with the admonition that: "I have not intended by anything I have said or done in this case, or in the statement of the opinion I have given, or any question that I may have asked, to intimate or suggest how you should decide on any question of fact submitted to you. If anything I do or say seems to so indicate, you will disregard it and form your own opinion. That is the general rule. At this time, however, and for the purpose of assisting you in properly deciding this case, I am permitted by the California Constitution to comment on the evidence and the testimony and credibility of the witnesses, and the opinion that I have just given you is such a comment."

The proper rule and scope of such comments have been explained in the following terms: "Article VI, section 10 of the California Constitution provides that '[t]he court may make such comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the cause.' This provision allows the trial judge to use his experience and training in evaluating the evidence, so as to aid the jury in reaching a just verdict. [Citation.] ■ The court's function in this regard goes well beyond a colorless recital of the evidence. A judge may analyze all or part of the testimony and express his views with respect to its credibility. [Citations.] [¶] Nevertheless, a judge's power to comment on the evidence is not unlimited. He cannot withdraw material evidence from the jury or distort the testimony, and he must inform the jurors that they are the exclusive judges of all questions of fact and of the credibility of the

witnesses. [Citations.]" (*Lewis* v. *Bill Robertson & Sons, Inc.* (1984) 162 Cal.App.3d 650, 654 [208 Cal.Rptr. 699].)

In *Clark* v. *Laughlin* (1977) 68 Cal.App.3d 506, 512-513 [137 Cal.Rptr. 354], the court held that the trial judge's statement to the effect that he believed a doctor's failure to inform a patient's mother of a certain fact was negligence was an appropriate and fair comment under the particular facts of the case, where the trial court had pointed out that it was not commenting on the crucial issues of proximate cause, damages or credibility.

The trial judge's comments in the case before us were even more attenuated from the crucial issues before the jury than was the judge's opinion of negligence in *Clark* because the sole focus of the judge's comment here was merely the reasonableness of respondent's request for documentary and testimonial support for the claimed loss. Under the circumstances presented here, we conclude that the judge's comment was appropriate and fair.

Appellants further contend that the court erred by instructing the jurors that nine of them need not agree on the same theory or theories to reach the same verdict so long as at least that number agreed that the answer to the special verdict question was "yes" or "no." Appellants' concern is that less than nine jurors might have found fraud by intentional misrepresentation but a sufficient additional number of jurors might have found fraud by willful concealment to constitute at least nine jurors concurring on the special verdict of fraud.

We agree with respondent that appellants actually are attacking the form of the special verdict questions. Their failure to object to those verdict forms below waives the issue on appeal. (*Olson* v. *Arnett* (1980) 113 Cal.App.3d 59, 66 [169 Cal.Rptr. 629].) In the event of a retrial, we believe that any problem with the theory of fraud actually relied upon by the jury may be mitigated by use of the special verdict forms in BAJI Nos. 16.50, 16.50.1 and 16.50.2 in a manner suggested by their common "Use Note."

We need address appellants' evidentiary contentions only long enough to observe that appellants' assertions of unduly prejudicial, irrelevant, cumulative or otherwise improper testimony must be deemed waived because, as they concede, their trial counsel "failed properly to object" to certain portions of the testimony "or at all" to other portions. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 307, p. 317.)

Appellants' final contention that the trial court erred in permitting respondent, as defendant and cross-complainant, both to open and to close argument on "Phase II" of trial also lacks merit.

The "Phase II" jury instructions stated, in part: "In Phase II, the jury is asked to decide this question: In respect to their claim of loss from the burglary of February 12, 1978, did Orient Handel or *any of its owners,* willfully and with the intent to defraud USF & G [respondent], either: [¶] a. Misrepresent or conceal any material facts or circumstances of the claim; or [¶] b. Engage in false swearing; or [¶] c. Engage in any fraud in connection with the claim. [¶] *In this Phase, the defendant, USF & G, has the burden of establishing by a preponderance of the evidence all the facts necessary to prove that Orient Handel or any of its owners* did any of the things described in the above question." (Latter italics added.)

Although appellants argue that Code of Civil Procedure section 607, subdivision 7, *requires* plaintiff to commence argument and permits plaintiff to conclude argument,[4] the section has been interpreted to mean "that the party upon whom the burden of proof rests has the right to open and close the argument subject to a reasonable discretion on the part of the court to regulate the time and manner of presenting the arguments." (*McCullough* v. *Langer* (1937) 23 Cal.App.2d 510, 524 [73 P.2d 649].) As the portion of the record quoted above unambiguously demonstrates, respondent and the burden of proof as to fraud under its cross-complaint in "Phase II" of trial. Accordingly, the trial court properly permitted respondent to open and close the argument pursuant to Code of Civil Procedure section 607.

■ As to the appellants' further contention that leave to file the cross-complaint was improperly granted because it was too close to the time set for trial on the complaint, we note that the issue is ordinarily a matter within the sound discretion of the trial court. Having reviewed the record, we find no clear abuse of the trial court's discretion here.

Having thus decided, we further conclude that a retrial, if any, be confined solely to that portion of the fraud cause of action exclusive of the burglary and theft raised by the cross-complaint because appellants have raised no contentions of error in that portion of the judgment rendered on the complaint (*ante,* fn. 1) and because the remaining portion of the issues raised by the cross-complaint " 'can be separately tried "without such confusion or uncertainty as would amount to denial of a fair trial" ' . . . . [Citation.]" (*Soils* v. *Oilfields Trucking Co.* (1979) 90 Cal.App.3d 349 [153 Cal.Rptr. 371].) On any such possible retrial, it shall be deemed established, as was determined at the last trial, that a burglary and a theft did occur.

Nothing we state herein concerning a possible retrial of the remaining portion of the fraud cause of action of the cross-complaint shall foreclose

---

[4] Code of Civil Procedure section 607, subdivision 7, provides: "When the evidence is concluded, unless the case is submitted to the jury on either side or on both sides without argument, the plaintiff must commence and may conclude the argument. . . ."

appellants, or any of them, from bringing, or the trial court from considering, a motion for summary judgment on the issue of justifiable reliance.

## DISPOSITION

The judgment is reversed, and the matter is remanded for further proceedings in accordance with the views expressed in this opinion. Respondent is to bear the costs of appeal.

Woods, P. J., and Kingsley, J., concurred.

Petitions for a rehearing were denied July 6, 1987, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied September 17, 1987.