[No. C000558. Third Dist. July 21, 1988.]

WILSON'S HEATING AND AIR CONDITIONING et al., Plaintiffs and Appellants, v.
WELLS FARGO BANK et al., Defendants and Respondents.

## COUNSEL

Jerrald K. Pickering for Plaintiffs and Appellants.

Wells, Wingate, Small & Graham and Leo J. Graham for Defendants and Respondents.

## OPINION

**DEEGAN, J.\***—Plaintiffs appeal (Code Civ. Proc., § 904.1, subd. (b)) from an order of the trial court (made after entry of a stipulated judgment in their favor) ruling they were not entitled to attorney's fees. We agree with the trial court and shall affirm.

### FACTS

The plaintiffs are subcontracting suppliers of materials and labor to Mount Lassen Development Corporation (Mt. Lassen), the owner of and general contractor for a completed condominium complex known as The Northwoods, located in Redding. Wells Fargo Bank (Bank) was the construction lender.

In 1981, the plaintiffs filed a complaint asserting a number of causes of action. In the first cause of action, denominated Breach of Contracts, they asserted they had fully performed under subcontracts formed with Mt. Lassen and were owed money on them. It was alleged that Mt. Lassen was the alter ego of individual defendants Winning, Gordon, and Lisle. In the second cause of action, denominated Foreclosure of Mechanics' Liens, they asserted they had complied with all the rerequisites for establishing their mechanics' liens which were superior to all claims against the real property asserted by defendants "named herein."[1] They prayed for a declaration of

---

\* Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.

[1] The remaining defendants were the Bank, the trustee for the Bank's deed of trust on The Northwoods, and several individual owners of condominium units named in the original complaint or subsequently as Does (the Saunders, the Niemans, and Messrs. Tollefson and Diaz).

the seniority of their liens and for a foreclosure sale to satisfy the liens. Three other causes of action (for foreclosure on the construction bond, in assumpsit, and upon an account stated) do not concern us in this appeal.

Mt. Lassen apparently filed for bankruptcy a year after the action commenced. The plaintiffs obtained relief from the bankruptcy court from the consequent automatic stay of proceedings and Mt. Lassen thus remained as a nominal defendant. The plaintiffs dismissed as to defendants Winning, Gordon and Lisle. Defendant Bank at some point foreclosed on its deed of trust on The Northwoods, becoming legal owner of the unsold lots. Ultimately the remaining parties stipulated to an entry of judgment in favor of all plaintiffs (save two who apparently were unlicensed) against the remaining defendants.[2] Following a hearing at which argument of counsel on the issue of attorney's fees was received, the trial court issued an order denying the plaintiffs their attorney's fees. Other facts pertinent to this appeal will be incorporated in the discussion.

## DISCUSSION

■ The elementary principle with which we begin in this case is that a party, prevailing or otherwise, is not entitled to recover for attorney's fees incurred in the action unless a contract between the parties or some statute so provides. (*Arthur B. Siri, Inc.* v. *Bridges* (1961) 189 Cal.App.2d 599, 603 [11 Cal.Rptr. 322].) In this case we are confronted with facts in which entitlement to attorney's fees must come either as a recoverable item in the plaintiffs' cause of action for foreclosure of their mechanics' liens or through a provision of a contract purportedly existing between the plaintiffs and the defendant on which the plaintiffs sued in their breach of contract cause of action. We address these theories in turn.

### I

■ The claim that plaintiffs are entitled to attorney's fees incurred in connection with the enforcement of their mechanics' liens is readily dispatched. The provision enshrining in the California Constitution the right of laborers or providers of materials to a lien against the property improved for the value of those goods or services (Cal. Const., art. XIV, § 3) is not self-executing and is inoperative except to the extent the Legislature has provided by statute for the exercise of the right. (*Morris* v. *Wilson* (1893) 97 Cal. 644, 646 [32 P. 801]; *Frank Curran Lbr. Co.* v. *Eleven Co.* (1969) 271

---

[2] As the plaintiffs' briefs seem to abandon any claim for fees against any defendant other than Bank, we shall accordingly restrict our analysis.

Cal.App.2d 175, 183 [76 Cal.Rptr. 753].) Although the statutory scheme originally provided for the recovery of attorney's fees by the successful lienholder, this provision of the statute was declared unconstitutional (*Builders' Supply Depot* v. *O'Connor* (1907) 150 Cal. 265, 268 [88 P. 982]) and no similar provision has been subsequently enacted. (*Siri, supra,* 189 Cal.App.2d at p. 603.) It is thus black letter law that except for any cause of action on a *contract* between the lien claimant and the owner of the improved property which provides for fees, a lienholder has no entitlement to them from the owner. (*Ibid.*; Marsh, Cal. Mechanics' Lien Law (4th ed. 1985) § 4.75, p. 4-79; 44 Cal.Jur.3d, Mechanics' Liens, § 162, p. 282; 57 C.J.S., Mechanics' Liens, § 353, p. 1037.)

 The plaintiffs' efforts to distinguish our opinion in *Siri* are not persuasive. The enactment subsequent to *Siri* of Civil Code section 1717 (hereafter § 1717)—the relevant provisions of which we shall encounter shortly—in no way undermines the validity of the decision, as "[t]he sole purpose of section 1717 is to transform a unilateral contract right to attorney's fees 'into a reciprocal provision giving the right to recover fees to whichever party prevails . . . .' " (*Associated Convalescent Enterprises* v. *Carl Marks & Co., Inc.* (1973) 33 Cal.App.3d 116, 120 [108 Cal.Rptr. 782]); it was intended as a measure which would convert one-sided attorney's fees provisions in contracts into reciprocal rights to such fees. (*Coast Bank* v. *Holmes* (1971) 19 Cal.App.3d 581, 597 & fn. 3 [97 Cal.Rptr. 30].)[3] Obviously, this code section has as a necessary prerequisite the existence of a contract being enforced between the parties to the lawsuit, and thus has no relevance whatsoever to the availability of fees in a statutory cause of action for foreclosure on a mechanic's lien. Of even less consequence is the distinction the plaintiffs attempt to make on the basis that *Siri* involved an *original* owner of the improved property (against whom no fees could be assessed because he was not in privity with the plaintiffs on any contract providing for them) whereas the defendant Bank became an owner through foreclosure. Finally, their claim that a contract exists between themselves and defendant Bank entirely misses the point of the principle expressed in *Siri*—if indeed a contract exists, then that is the separate source of attorney's fees; it is not the *lien* which creates the right.

The trial court was thus entirely correct in concluding there was no availability of fees in an action to establish and enforce a mechanics' lien. We next turn to its implied rejection of the arguments by the plaintiffs

---

[3]There is no lack of reciprocity in the attorney fee provisions of the subcontracts between plaintiffs and Mt. Lassen. See footnote 4. Thus there is no occasion for application of section 1717 as between those parties. The question here is whether the Bank, a nonsignatory to the contracts, is liable for the attorneys' fees by operation of section 1717.

that they are entitled to fees as the result of some contract which was enforced between the plaintiffs and the defendant.

## II

In the breach of contract claim (in which defendant Bank is not even named as a party to the subcontract and the prayer for which seeks damages only against the defunct Mt. Lassen and the now dismissed individual defendants), the plaintiffs aver (as we have noted) a series of written subcontracts between themselves and Mt. Lassen. The plaintiffs represent on appeal without challenge that the provisions of these subcontracts which they consider germane to their argument are identical in each agreement. We include them in the margin.[4] In defendant Bank's answer to the complaint, it alleged as part of its third affirmative defense that it held a deed of trust, securing a promissory note and building loan agreement executed by Mt. Lassen and the Bank, and alleged that its deed of trust was recorded before any work commenced and thus was senior to any other lien. The provisions of the building loan agreement which the plaintiffs would find relevant (despite the fact the building loan agreement was not itself the basis for any cause of action or defense) are similarly set out in the margin.[5] Relying on

---

[4] "23. DISPUTES: . . . [¶] If the parties become involved in . . . litigation arising out of this contract or the performance of it, the court . . . shall award reasonable costs and expenses of . . . litigation, including . . . attorney's fee[s], to the prevailing parties. The parties agree that the party who recovers . . . litigation expenses shall recover the full amount of all such expenses and fees incurred in good faith."

"25. CONSTRUCTION LENDER: The obligations of the Contractor and Subcontractor under this Subcontract are hereby conditioned upon the approval of Subcontractor by the construction lender. . . . Contractor . . . shall notify Subcontractor of the lender's approval or disapproval as soon as it is received . . . . Subcontractor shall provide Contractor with such general information . . . as may be required by the Owner o[r] the construction lender. In the event of disapproval . . . the Subcontract shall terminate and neither party shall have any further obligations hereunder."

A third provision on which the plaintiffs would rely involving indemnification (§ 20) is concerned only with personal injury or property damage liability and consequently has no application in this case.

[5] "6.4 *Right to Complete Construction.* In the event that Borrower shall abandon or fail to diligently proceed with construction of the Improvements or otherwise be in default hereunder, Lender shall have the right to enter upon the Property and take over and complete the work of construction, to make disbursements from the Account, to discharge and replace the contractors or subcontractors and to employ watchmen to protect the Property and Improvements. Any contracts entered into or indebtedness incurred upon the exercise of such right may be in the name of Borrower and Lender is hereby irrevocably appointed the attorney in fact of Borrower (said appointment being coupled with an interest) to enter into said contracts, incur such obligations, enforce any contracts or agreements theretofore made by or on behalf of Borrower and do any and all things necessary or proper to complete the work of construction including the signing of Borrower's name to such contracts and documents as may be deemed necessary by legal counsel for Lender. In no event shall Lender be required to expend its own funds to complete the Improvements if the funds in the Account are

section 1717, the plaintiffs totally ignore concerns with privity of contract or with the identity of the contract being enforced. Thus, plaintiffs conclude they are entitled to attorney's fees on these contracts by action of reciprocity principles in section 1717 because in some theoretical scenario the defendant might have enforced a contract and recovered attorney's fees against them. The following analysis should reveal the error of this approach.

The version of section 1717 in effect at the time of judgment (see *Lewis* v. *Alpha Beta Co.* (1983) 141 Cal.app.3d 29, 33 [189 Cal.rptr. 840]) provided in relevant part, "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the prevailing party, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements." (Stats. 1983, ch. 1073, § 1, p. 3785.)

As earlier noted, the effect of this section in an action on a contract between a signatory plaintiff and a signatory defendant to enforce its terms is to make reciprocal any provision awarding attorney's fees regardless of any wording purporting to make the right unilateral. (*Reynolds Metals Co.* v. *Alperson* (1979) 25 Cal.3d 124, 128 [158 Cal.Rptr. 1, 599 P.2d 83].) The repercussions of the section, however, set off sympathetic vibrations in situations other than this straightforward one.

In *Reynolds Metals,* the case on which the plaintiffs inexplicably place so much reliance, a signatory plaintiff sought to enforce the terms of a contract against nonsignatory defendants on a theory of alter ego. The defendants prevailed and the trial court awarded attorney's fees to them. The Supreme Court reversed only for the purpose of redetermining the fees to correspond with the percentage stated in the contract but otherwise held that the recovery of attorney's fees by the nonsignatory defendants was proper. The court stated: "Its purposes require section 1717 be interpreted to further provide a reciprocal remedy for a nonsignatory defendant, *sued on a con-*

insufficient, but Lender may, at its option, advance such funds. Any funds so advanced shall be added to the outstanding balance of the Note and shall be payable to Lender by Borrower on demand together with interest at the rate specified in the Note."

"10.8 *Actions.* Lender shall have the right to commence, appear in or defend any action or proceeding purporting to affect the rights, duties or liabilities of the parties hereunder, or the disbursement of any funds in the Account. In connection therewith, Lender may incur and pay costs and expenses, including reasonable attorney's fees. Borrower agrees to pay to Lender on demand all such expenses incurred or paid and Lender is hereby authorized to disburse funds from the Account for said purpose."

*tract as if he were a party to it,* when a plaintiff would clearly be entitled to attorney's fees should he prevail in enforcing the contractual obligation against the defendant." (25 Cal.3d at p. 128 [italics ours].) Thus, section 1717's reciprocity was enlarged only to permit one not party to a contract to nevertheless recover fees when actually sued on the contract (if it provided for attorney's fees).

The next situation involves a nonsignatory plaintiff (i.e., suing as a third party beneficiary (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 653, p. 593)) seeking to enforce a contract against a signatory defendant. If the plaintiff were to prevail in enforcing the contract against the defendant, attorney's fees could be recovered by operation of the contract.[6] To balance this entitlement to fees, the court in *Jones* v. *Drain* (1983) 149 Cal.App.3d 484 [196 Cal.Rptr. 827] permitted the prevailing signatory defendant to recover fees *against* such a nonsignatory plaintiff—even where the claim of ability to enforce the contract was meritless—on the theory that section 1717's reciprocity principle would so require because *had* the plaintiff been successful the defendant would have been liable for fees.[7]

There is nothing about the subcontracts in this case which on their own obligates the Bank as a party; indeed, as we have earlier noted, the plaintiffs did not even attempt to enforce these subcontracts directly against the Bank, seeking instead to recover damages only from Mt. Lassen and Messrs. Winning, Gordon and Lisle. That the Bank's consent was a condition precedent to the existence of the subcontracts does not operate to make the Bank a party to the subcontracts or in privity with a party.

---

[6] Two examples of this sort of award have been sustained (although the relationships in the cases were somewhat more convoluted). In *Lewis* v. *Alpha Beta Co., supra,* a plaintiff successful in enforcing the provisions of a lease executed partially for its benefit (but on which it was not a signatory) was entitled to attorney's fees. (141 Cal.App.3d at p. 33.) Another example of the prevailing nonsignatory plaintiff/losing signatory defendant relationship involves a party buying a house encumbered by a "due on sale" promissory note secured by a deed of trust who (of course) does not assume the note and trust deed and then is forced to enjoin foreclosure resulting when the beneficiary discovers the sale. Courts have held the prevailing plaintiff is entitled to attorney's fees under section 1717 because even though not a signatory to the promissory note or deed providing for fees, practically speaking the plaintiff would have to pay a prevailing defendant's fees to avert foreclosure of the property. (*Wilhite* v. *Callihan* (1982) 135 Cal.App.3d 295, 301-302 [185 Cal.Rptr. 215]; *Saucedo* v. *Mercury Sav. & Loan Assn.* (1980) 111 Cal.App.3d 309 [168 Cal.Rptr. 552].)

[7] In *Leach* v. *Home Savings & Loan Assn.* (1986) 185 Cal.App.3d 1295, 1304-1307 [230 Cal.Rptr. 553], the court refused to award fees to a signatory defendant prevailing against a nonsignatory plaintiff. The court (correctly, we think) found *Jones* went too far in awarding fees to such a defendant *whenever* sued by a nonsignatory plaintiff on the contract and instead held fee recovery should be limited to situations where the defendant can show it actually would have been liable for fees.

Thus, the plaintiffs are limited to showing the Bank in some way was an obligated nonsignatory on the subcontracts if they are to have any hope of recovering attorney's fees.[8] There is no claim (nor could there be) that the Bank was an alter ego of Mt. Lassen. Nor does the Bank's foreclosure on its deed of trust cause the Bank to "step into the shoes" of Mt. Lassen for the purposes of Mt. Lassen's *contracts*. The foreclosure merely puts the Bank in the position of *ownership* of the property, its title being subject to the plaintiffs' mechanics' liens (which, we reiterate, do not include attorney's fees in their ambit). This leaves their argument that section 6.4 of the building loan agreement, authorizing the Bank to take over any contract of Mt. Lassen, put the Bank in Mt. Lassen's contractual shoes whether it exercised that power or not. This is not the state of the law. ■ In order for an assignment to obligate the assignee on a contract, there must be either an express assumption of the contract or an acceptance of the benefits of the contract (from which an assumption of the burdens is presumed). (1 Witkin, *op. cit. supra*, Contracts, § 953, p. 849; *Citizens Suburban Co. v. Rosemont Dev. Co.* (1966) 244 Cal.App.2d 666, 675-677 [53 Cal.Rptr. 551].) ■ The Bank certainly did not expressly assume the obligations of the subcontracts. And the arguments advanced by plaintiffs to show that the Bank accepted the benefits of the subcontracts cannot be sustained. The Bank obtained its title to the property through *foreclosure* on its deed of trust, not by operation of contract through an assignment. As for the argument the Bank actually attempted to enforce the subcontract against the plaintiffs under the authority of the building loan agreement by requesting attorney's fees in its answer, this is a misreading of the answer's allegation. The building loan agreement appears in the answer, as we have previously noted, *only* as an explanation for the obligation which underlay the deed of trust which in turn was the basis for the affirmative defense of a senior lien. The request for attorney's fees in the answer's prayer was in no way tied to any contract, is in fact mere boilerplate, and can be fully explained as seeking *the Bank's* entitlement to attorney's fees under *Reynolds Metals, supra,* 25 Cal.3d 124, had there been an unsuccessful attempt to hold the Bank liable on a contract to which it was not a party. Consequently, the Bank has no liability on the subcontracts.

Looking to the building loan agreement by itself, the plaintiffs wisely refrain from claiming fees on the basis the Bank might have sued them on this agreement and recovered. This is not the contract being actually enforced. Plaintiffs *do* claim entitlement to fees because they might have enforced the building loan contract as third party beneficiaries. But again, the fact the building loan agreement was not the contract actually being

---

[8] If such be the case the failure to name the Bank on the breach of contract action is of no moment as it would be stepping into Mt. Lassen's contractual shoes.

enforced is enough to preclude such a claim. We conclude the building loan agreement cannot possibly be a source of fees for the plaintiffs.

"Respondent was not a party to the contract between [Mt. Lassen] and appellant[s] which contained the attorney's fees clause, nor is there any evidence that respondent expressly assumed the obligations of the contract between [Mt. Lassen] and appellant[s]. There is no basis in the record for finding any agreement by respondent to pay appellant[s'] attorney's fees in the event of litigation." (*Glynn* v. *Marquette* (1984) 152 Cal.App.3d 277, 280 [199 Cal.Rptr. 306].) Consequently, neither section 1717 nor any contract obligates the Bank to pay the attorney's fees of the plaintiffs. The trial court's ruling was correct.[9]

The judgment is affirmed.

Puglia, P. J., and Sparks, J., concurred.

---

[9] We do not consider the "unjust enrichment" argument to have been adequately raised below or in the appellant's opening brief to merit discussion, but we will note the concept has little if any application in the context where both sides have paid their own attorney's fees.