[No. B027740. Second Dist., Div. Seven. June 5, 1990.]

CALIFORNIA FAIR PLAN ASSOCIATION, Plaintiff and Respondent, v.
EDWARD POLITI et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions directed to be published follow: the introduction, the Statement of Facts and Proceedings Below, part I of the Discussion, and the Disposition.

## COUNSEL

David S. Sperber for Defendants and Appellants.

Cummins & White, Francis X. Sarcone, Kent M. Bridwell and Roger H. Gray for Plaintiff and Respondent.

## OPINION

**JOHNSON, J.**—Appellants Edward Politi and Michael Politi appeal from the judgment in favor of respondent California Fair Plan Association granting rescission of the fire insurance policy between the parties and awarding respondent attorney's fees as damages for breach of the covenant of good faith and fair dealing.

We conclude respondent may only recover contract damages in its action for breach of the covenant of good faith and fair dealing. We therefore reverse the award of attorney's fees. We affirm the judgment in all other respects.

### STATEMENT OF FACTS AND PROCEEDINGS BELOW

In May 1980, appellants purchased property from Charles Killion. Appellants intended to develop the property for light industrial use including office space. The property contained a house, detached garage, a barn and

stables. As part of the purchase agreement, Killion was granted salvage rights to remove the structures on the property. At the close of escrow, appellants authorized Killion to remove wood from the roof.

Killion continued to occupy the property following the close of escrow and commenced removal of various structures including the garage, barn and corral. Killion also removed a portion of the house's roof and the supporting joists around June 1981.

In May 1980, appellants applied to respondent for fire insurance on the house. In their application, appellants represented the house was unoccupied. However, Killion still occupied the house.[1] Appellants further represented there was no mortgagee or lender for the property although Killion had taken a second trust deed on the property. Additionally, appellants did not inform their insurance broker or respondent of Killion's salvage rights in the property. Had respondent known of Killion's encumbrance and salvage rights, it would not have issued the policy.

On October 24, 1980, respondent issued appellants a $100,000 fire insurance policy. The policy provided: "The entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in any case of any fraud or false swearing by the insured relating thereto."

On September 3, 1981, appellants' insurance broker wrote appellants concerning renewal of the fire insurance policy. The letter stated: "Please review the following . . . the description of the property and its uses as respects the number of units whether occupied or vacant; notify us of any changes in occupancy and/or unusual hazards, including vacancy. [¶] If the description is incorrect it is possible that coverage could be void at the time of a loss." Appellants did not inform the broker of the roof's removal or that plumbing fixtures and utilities had been removed.[2]

On September 22, 1981, a portion of the house burned. Appellants hired a public adjuster to estimate the cost to repair the house. Appellants then submitted a claim of $51,796 under oath although the actual damage resulting from the fire was significantly less.

---

[1] Respondent subsequently inspected the property and learned it was occupied. Appellants admitted the occupancy, and a rider was issued to show it was tenant-occupied. Appellants did not inform respondent when Killion later vacated the property.

[2] The removal of a portion of the house and the plumbing fixtures was considered abnormal conditions which should be reported to the insurance company and could affect the insurability of the structure.

Following the fire, respondent's claims manager and a private investigator inspected the property and house. They found the house was damaged by fire. However, they also found the bathroom fixtures were removed, the house littered with debris and manure, the utility meters removed and a significant portion of the roof and supporting joists removed.

On December 21, 1981, respondent wrote appellants denying the claim and returning a portion of the premium. The claim was rejected because appellants had no insurable interest in the property, the hazard to the property was increased by the roof's removal, the house had no cash value and appellants failed to disclose Killion's interest in the property as mortgagee and as to his salvage rights.

On December 31, 1981, respondent commenced an action against appellants for declaratory relief, rescission of the insurance policy and fraudulent concealment. Appellants cross-complained against respondent for insurance bad faith in the denial of the claim.

Appellants' cross-complaint was tried to a jury. The same jury issued an advisory verdict on respondent's causes of action; however, the actions were ultimately decided by the trial court.

On October 17, 1986, the jury returned a special verdict which found appellants had an insurable interest in the property. The special verdict also found appellants (1) concealed material facts from respondent concerning the insured property, (2) knew of physical changes in the property's condition which increased the risk of hazard, (3) failed to inform respondent of that increased risk, and knowingly overstated their claim to respondent.

The jury also found in favor of respondent in appellants' action for breach of the covenant of good faith and fair dealing.

On December 3, 1986, respondent moved for an award of attorney's fees arguing appellants' fraud constituted a breach of the covenant of good faith and fair dealing. Appellants objected to the award arguing attorney's fees were not recoverable.

On December 4, 1986, appellants moved for a new trial. The trial court did not rule on the motion within the statutory period and, thus, it was denied by operation of law. (Code Civ. Proc., § 660.) On March 24, 1987, the trial court filed a document entitled judgment on special verdict. By agreement of the parties, this document was later amended to become the trial court's tentative decision.

On April 13, 1987, the trial court filed the judgment which adopted the jury's advisory findings and held in favor of respondents on their causes of action. The trial court, by separate order, awarded respondent $75,000 in attorney's fees.

On May 12, 1987, appellants appealed from the judgment on special verdict dated March 24, 1987, although this document was subsequently amended to be the tentative decision, and the April 13 order awarding attorney's fees. The order awarding attorney's fees is appealable; the tentative decision is not. (Code Civ. Proc., § 904.1; see *Rich* v. *City of Bencia* (1979) 98 Cal.App.3d 428, 432 [159 Cal.Rptr. 473].) Since there is an existing appealable judgment, we construe the notice of appeal to be an appeal from the judgment entered April 13, 1987, so we may proceed to the merits. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 375, p. 377.)

## DISCUSSION

### I. THE TRIAL COURT ERRED IN AWARDING ATTORNEY'S FEES TO RESPONDENT.

■ Appellants contend the trial court erroneously awarded respondent attorney's fees under the cause of action for breach of the covenant of good faith and fair dealing. We agree.

■ Generally, a party may only recover attorney's fees if a contractual provision or statute so provides. (*Alhambra Redevelopment Agency* v. *Transamerica Financial Services* (1989) 212 Cal.App.3d 1370, 1380 [261 Cal.Rptr. 248]; *Wilson's Heating & Air Conditioning* v. *Wells Fargo Bank* (1988) 202 Cal.App.3d 1326, 1329 [249 Cal.Rptr. 553].)[3] ■ There is no dispute respondent was not entitled to recover attorney's fees pursuant to any statute or contract. Instead, respondent contends it was entitled to attorney's fees as an element of damages for appellants' breach of the covenant of good faith and fair dealing. This is incorrect.

■ An insured may recover those attorney's fees incurred in securing his benefits under the insurance contract as an element of his tort damages in an action for breach of the covenant of good faith and fair dealing. (*Brandt* v. *Superior Court* (1985) 37 Cal.3d 813, 817 [210 Cal.Rptr. 211, 693

---

[3] One notable exception is the "third party tort." Under this theory, a party may recover attorney's fees as damages if he is required to employ an attorney to prosecute or defend an action against a third party because of the defendant's tort. (*Gray* v. *Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 505 [198 Cal.Rptr. 551, 674 P.2d 253, 44 A.L.R.4th 763].) This exception would not apply here since respondent's attorney's fees were incurred while prosecuting its action against appellants rather than a third party.

P.2d 796].) "When an insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the benefits due under a policy, it follows that the insurer should be liable in a tort action for that expense." (*Ibid.*) The same damages are not recoverable by an insurer, however, because its action against the insured only sounds in contract.

■ The covenant of good faith and fair dealing is implied in all contracts. (*Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 683 [254 Cal.Rptr. 211, 765 P.2d 373].) Thus, in the insurance context, courts have construed this implied covenant to extend to both the insured and the insurer. (*Commercial Union Assurance Companies* v. *Safeway Stores, Inc.* (1980) 26 Cal.3d 912, 918 [164 Cal.Rptr. 709, 610 P.2d 1038]; *Orient Handel* v. *United States Fid. & Guar. Co.* (1987) 192 Cal.App.3d 684, 696-697 [237 Cal.Rptr. 667]; *Liberty Mut. Ins. Co.* v. *Altfillisch Constr. Co.* (1977) 70 Cal.App.3d 789, 797 [139 Cal.Rptr. 91].)

However, while a breach of the covenant by an insurer results in an action which sounds both in tort and contract, the same is not true when an insured breaches the covenant. (See *Murphy* v. *Allstate Ins. Co.* (1978) 83 Cal.App.3d 38, 48-49 [147 Cal.Rptr. 565].) An action by an insurer against its insured for breach of the covenant of good faith and fair dealing only sounds in contract and, thus, any recovery must be limited to contract damages. (See *Liberty Mut. Ins. Co.* v. *Altfillisch Constr. Co., supra,* 70 Cal.App.3d at p. 797.) As the court in *Liberty Mut. Ins.* explained, "a breach [of the covenant of good faith and fair dealing] . . . by the insured would lead to the same legal consequences as any garden variety breach of contract."

The *Liberty Mut.* court's conclusion is, of course, consonant with settled principles. In *Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d 654, the Supreme Court reaffirmed that not all breaches of the covenant of good faith and fair dealing result in tort liability. (*Id.* at p. 693.)

■ In the insurance context, tort liability has been limited to instances where the *insurer* acts in bad faith. (See, e.g., *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 430 [58 Cal.Rptr. 13, 426 P.2d 173]; *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 575 [108 Cal.Rptr. 480, 510 P.2d 1032].) Tort liability for an insurer is predicated upon a number of special factors including the quasi-public nature of the insurer and the fact the relationship of insurer and insured is inherently unbalanced, the insurer being in a superior bargaining position. (*Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 820 [169 Cal.Rptr. 691, 620 P.2d 141]; *Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d at pp. 692-693.)

It is axiomatic these factors only militate towards imposing tort liability on the insurer while limiting recovery against the insured to contractual damages. (*Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d at p. 693.) Thus, here respondent's action for breach of the covenant of good faith and fair dealing was another "garden variety breach of contract" action for which only contract damages may be recovered. (*Liberty Mut. Ins. Co.* v. *Altfillisch Constr. Co., supra,* 70 Cal.App.3d at p. 797.) Since the insurance contract did not contain an attorney's fee provision, respondent is not entitled to attorney's fees under the contract. (Civ. Code, § 1717; Code Civ. Proc., § 1021.)

At oral argument, respondent was granted leave to file supplemental briefing on a case it asserted supported the attorney's fees award. The case upon which respondent now relies, *CNA Casualty of California* v. *Seaboard Surety Co.* (1986) 176 Cal.App.3d 598 [222 Cal.Rptr. 276], provides no basis for respondent's claim.[4]

In *CNA Casualty of California* v. *Seaboard Surety Co., supra,* 176 Cal.App.3d 598, CNA brought an action for equitable contribution against three other insurers to recover a portion of legal fees incurred in defending their insured. CNA recovered a portion of the defense costs but was denied its own attorney's fees incurred in bringing the action against the insurers. (*Id.* at p. 619.) On its cross-appeal, CNA argued it was entitled to *Brandt* fees because it was equitably subrogated to the rights of its insured and, thus, its insured would have been able to recover such fees had it sued the insurers for breach of the covenant of good faith and fair dealing.

The Court of Appeal, focusing upon the relationship between the *insured* and the defendant insurers, affirmed the denial of *Brandt* fees noting the *insured* suffered no loss in the action against the insurers and there was no finding the insurers breached their covenant of good faith and fair dealing to the *insured*. (176 Cal.App.3d at p. 621.)

The distinction between our case and *CNA Casualty of California* v. *Seaboard Surety Co., supra,* 176 Cal.App.3d 598, is manifest. Respondent is not seeking to recover attorney's fees against another insurer based upon the rights of an insured. To the contrary, it seeks attorney's fees in its own right against an insured. Such damages are not recoverable and that portion of the judgment must be reversed.

---

[4] It is interesting to note that while respondent asserts this case supports its position, respondent failed to include any discussion of the case in its respondent's brief. Moreover, respondent offers no explanation for its omission.

II.-VI.*

. . . . . . . . . . . . . . . . . .

## DISPOSITION

The award of attorney's fees is reversed. The judgment is otherwise affirmed. The parties are to bear their own costs on appeal.

Lillie, P. J., concurred.

**WOODS (Fred), J.**—I concur in the judgment only. I find no support in the statutory or case law which would enable the trial court to award attorney's fees against the insured in this instance. Nor would I inversely apply the decision of our California Supreme Court in *Brandt* v. *Superior Court* (1985) 37 Cal.3d 813 [210 Cal.Rptr. 211, 693 P.2d 796] to uphold the attorney's fees award disguised as damages as suggested by respondent at oral argument.

I would go further and respectfully suggest that the holding in *Brandt* be reexamined by our California Supreme Court for what it is, namely, an attempt to "judicially legislate" around California Code of Civil Procedure section 1021, which proscribes attorney's fees under circumstances such as in the instant case. I would adopt the well-reasoned view by Justice Malcolm Lucas in his dissent in the *Brandt* case, which would preclude attorney's fees to carrier and insured alike in cases such as the one before us in accordance with California Code of Civil Procedure section 1021. I would urge the California Supreme Court to reexamine its judicial legislation in *Brandt* and to adopt the view of Justice Malcolm Lucas as contained in his dissent.

Respondent's petition for review by the Supreme Court was denied September 13, 1990.

---

* See footnote, *ante,* page 1612.