Filed 10/28/13  S.E.V. Car Wash v. Aminpour CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| S.E.V. CAR WASH, INC., et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>SAIED "STEVE" AMINPOUR et al.,<br><br>Defendants and Respondents. | B238823<br><br>(Los Angeles County<br>Super. Ct. No. BC408205) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Elizabeth Allen White, Judge.  Affirmed as modified.

KO Legal, and Kimberly Olson; Westrup Klick and R. Duane Westrup, for Appellants.

No appearance for Respondent.

_____

Plaintiffs and appellants S.E.V. Car Wash, Inc., S.E.V. Investments LLC, Shagen Galstanyan, Armanouch Ter-Galstanyan, Vahe Ter-Galstanyan and Edwin Ter-Galstanyan (collectively S.E.V. or the S.E.V. plaintiffs) appeal from the judgment entered in favor of S.E.V. and against defendants and respondents Saied Aminpour, Gadi Emein, Freydon Esmaili and Glendale Colorado Investments, Inc. (collectively Glendale or the Glendale defendants) on the complaint, and against S.E.V. and in favor of Glendale on the cross-complaint. S.E.V. contends the trial court prejudicially erred by: (1) failing to issue a written statement of decision; (2) incorrectly calculating usury damages; (3) awarding Glendale Colorado Investments prejudgment interest; and (4) denying S.E.V.'s new trial motion. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

The multi-million dollar sale of several car washes is at the center of this litigation. Briefly summarized, plaintiff S.E.V. Car Wash, Inc. owned and operated several car washes including those known as Alessandro and Sunnymead, which were located on real property owned by plaintiff S.E.V. Investments LLC. Plaintiffs Shagen Galstanyan, Armanouch Ter-Galstanyan, Vahe Ter-Galstanyan and Edwin Ter-Galstanyan were officers and directors of both companies.[2] Defendants Gadi Emein and Said Aminpour owned defendant Glendale Colorado Investments, Inc. (Glendale Investments); Aminpour was also a loan officer at Wilshire Bank. Defendant Freydon Esmaili purchased the Alessandro car wash from S.E.V. and had also agreed to purchase Sunnymead, but that transaction was canceled by S.E.V.

---

[1] Glendale has not filed a respondent's brief so we are without benefit of its view of the facts. Although California Rules of Court, rule 8.220(a) gives us discretion to accept as true Car Wash's statement of facts, we need not do so. (See *Stoner v. Williams* (1996) 46 Cal.App.4th 986, 990 [court need not exercise option to accept as true facts stated in appellant's opening brief where those facts are not set forth in an unbiased manner].)

[2] To avoid confusion, we refer to the Galstanyans by their first names.

In September 2006, the S.E.V. plaintiffs were in escrow to purchase a courier business known as Tele-Car, and the real property upon which it was located. When they could not obtain a loan from Wilshire Bank for the full purchase price of Tele-Car, S.E.V. followed loan officer Aminpour's advice that plaintiffs obtain a hard money loan from Glendale Investments for the $1.5 million shortfall.[3] On February 27, 2007, S.E.V. executed a $1.5 million promissory note in favor of Glendale Investments (the First Glendale Promissory Note). The note carried an interest rate of 12 percent per annum and was secured by trust deeds on five S.E.V. properties, including Alessandro and Sunnymead; it was payable in interest-only payments of $15,000 per month until March 1, 2008, when the full loan would become due and payable. From the $1.5 million loan proceeds, S.E.V. paid Glendale a fee of $75,500.

In September 2007, anxious to raise funds to pay off the First Glendale Promissory Note, S.E.V. entered into an agreement to sell the Alessandro car wash for $8 million and the Sunnymead car wash for $7.4 million in separate transactions to defendant Esmaili. During the delayed Alessandro escrow, the First Glendale Promissory Note became due and payable. Feeling pressured to pay off that note, S.E.V. succumbed to Esmaili's demands to reduce the Alessandro purchase price to $5.3 million. When Esmaili was unable to raise that amount, S.E.V. agreed to carry back a promissory note for the $1,900,000 short fall (the First Esmaili Promissory Note), as well as a promissory note for approximately $90,000 in closing costs that Esmaili could not cover (the Second Esmaili Promissory Note); Esmaili promised to personally guarantee both notes. S.E.V. agreed to pay Aminpour, who falsely represented that he was a licensed real estate broker, an $110,000 commission on the sale of the Alessandro car wash. That commission was paid through escrow to FEMI Consulting, Inc., which was owned by Emein (and co-owned with Aminpour of Glendale Investments).

The Alessandro sale closed in or about late August, early September 2008. Glendale received $345,000 from the proceeds of the Alessandro sale. Of that amount,

---

[3] The S.E.V. plaintiffs had a long relationship with Aminpour, whom plaintiff Vahe thought of as a mentor. Aminpour also owned a car wash.

$300,000 was applied to reduce the principal of the First Glendale Promissory Note to $1.2 million and the $45,000 balance was a "non-principal payment" on a new $1.2 million loan dated August 27, 2008 (the Second Glendale Promissory Note).[4] The Second Glendale Promissory Note carried a 12 percent interest rate and stated that it was due and payable on March 1, 2008 (which was five months *before* it was executed). When Esmaili did not make payments on the First and Second Esmaili Promissory Notes, S.E.V. could not make its payments on the Second Glendale Promissory Note. In November 2008, Glendale threatened to foreclose on the four properties securing the Second Glendale Promissory Note. The S.E.V. plaintiffs came to the conclusion that Aminpour, Emein and Esmaili had conspired to fraudulently induce S.E.V. to agree to the terms of the First and Second Glendale Promissory Notes, the Alessandro sale, the First and Second Esmaili Promissory Notes and to pay Aminpour an unlawful broker commission.

S.E.V. filed its original complaint in this action on February 20, 2009. On August 11, 2009, it filed the operative first amended complaint (the complaint) for conspiracy to commit fraud, fraud, cancellation of written instrument, breach of promissory notes, breach of written guaranty, declaratory relief, injunctive relief, quiet title and constructive trust. On August 6, 2010, the trial court denied without prejudice S.E.V.'s motion to file a second amended complaint. In March 2011, it denied Glendale's motion to strike the complaint. On April 4, 2011, Glendale filed a cross-complaint which S.E.V. answered.

A six-day bench trial commenced on July 21, 2011. The parties stipulated that: (1) a $75,500 "non-principal payment" was made to Glendale relating to the $1.5 million note (i.e. the First Glendale Promissory Note); (2) a $45,000 "non-principal payment" was made to Glendale through the closing of the Alessandro sale; and (3) S.E.V. made interest payments to Glendale in the amount of $255,000 (no dates for those interest payments were specified). On July 28, 2011, after hearing all of the evidence, the trial

---

**4**    Emein testified that he understood the loan to be a continuation of the old loan, not a new loan.

4

court granted S.E.V.'s motion to amend the complaint to add a usury claim. The parties agreed to a briefing schedule for written closing arguments.

In a minute order filed on August 22, 2011, the trial court found in favor of the S.E.V. plaintiffs and against the Glendale defendants. Specifically, it found the commission paid to Aminpour was unlawful, Esmaili substituted a different promissory note from the one to which the parties had agreed, Esmaili had agreed to guarantee the First Esmaili Promissory Note, and Esmaili fraudulently failed to sign the guaranty for the Second Esmaili Promissory note. Regarding the $1.5 million loan from Glendale Investments to S.E.V., the trial court found the loan was usurious and that S.E.V. breached its agreement to pay the $1,200,000 balance on that loan. Judgment was entered on December 5, 2011, as follows:

S.E.V.'s Complaint

- $110,000 against Aminpour and Emein (co-owners of Glendale Investments) on the second cause of action for fraud;

- $1,900,000 plus 8.5 percent interest from September 17, 2008 against Esmaili (purchaser of the Alessandro car wash) on the second cause of action for fraud and seventh cause of action for breach of written guaranty;

- $90,128 plus 8.5 percent interest from September 17, 2008 against Esmaili on the second cause of action for fraud and seventh cause of action for breach of written guaranty;

- $180,000 on the usury cause of action against Glendale Investments, Aminpour and Emein, and reduction of the interest rate on the Second Glendale Promissory Note to 10 percent;

- No judgment to either party on the eighth cause of action for declaratory relief.

5

<u>Glendale's Cross-Complaint</u>

- $1,020,000 plus 10 percent interest from March 1, 2008 in favor of Glendale Investments, Inc. and against the S.E.V. plaintiffs on the eleventh cause of action for breach of contract.[5]

- In favor of S.E.V. and against the Glendale defendants on the cross-complaint's first and second causes of action for intentional and negligent infliction of emotional distress, third cause of action for abuse of process, fourth cause of action for fraudulent transfer, fifth cause of action for fraud and deceit, sixth cause of action for negligent misrepresentation, seventh and eighth causes of action for intentional and negligent interference with prospective economic advantage, ninth cause of action for breach of guaranty, tenth cause of action for money had and received, twelfth cause of action for breach of the covenant of good faith and fair dealing and thirteenth cause of action for injunctive relief.

- The trial court declined to award judgment to either party on the cross-complaint's fourteenth cause of action for declaratory relief.

<u>Attorney's Fees & Costs</u>

- In favor of S.E.V., costs of $15,935.49 and attorney's fees in an undetermined amount.[6]

S.E.V. filed a motion for new trial and a supplemental new trial motion, both of which were denied. S.E.V. timely appealed.

---

**5** The $1,020,000 amount appears to be the $1,200,000 unpaid balance on the Second Glendale Promissory Note, less the $180,000 usury award in favor of the S.E.V. plaintiffs.

**6** The S.E.V. plaintiffs were awarded a net total of $1,260,128, plus interest, costs and attorney's fees ($2,280,128 total damages less the $1,020,000 awarded to Glendale on its cross-complaint).

## DISCUSSION

A.   *S.E.V. Did Not Request A Written Statement of Decision*

The S.E.V. plaintiffs contend the trial court's failure to issue a written statement of decision is reversible error. They argue that the "Motion to Correct and Clarify Statement of Decision," filed on the 10th day after the tentative decision and served by mail, was a statutory request for a statement of decision. We disagree.

Written findings of fact and conclusions of law are not required except upon request of a party. (Code Civ. Proc., § 632.) Following a trial that lasts more than one day, any such request must be made within 10 days after the court announces a tentative decision and must specify those controverted issues as to which the party is requesting a statement of decision. (*Ibid.*; see also Cal. Rules of Court, rule 3.1590 (d).) Failure to provide a written statement of decision when properly requested is reversible error per se; the remedy is to remand with orders that the trial court prepare a written statement of decision. (*Espinoza v. Calva* (2008) 169 Cal.App.4th 1393, 1397-1398.) But absent a timely request, the trial court has no duty to prepare a written statement of decision. (*Staten v. Heale* (1997) 57 Cal.App.4th 1084, 1091; *Arrieta v. Paine, Webber, Jackson & Curtis* (1976) 59 Cal.App.3d 322.)

Here, after discussing a briefing schedule for written closing arguments, on July 28, 2011, there ensued the following colloquy between the trial court and counsel for S.E.V.:

> "[COUNSEL FOR S.E.V.]: Your Honor, on that point, are we going to receive oral statement of decision or will there be a written statement of decision? What's the court's preference? [¶] THE COURT: I will notify you by minute order. It's up to you as to what you want the court to do in that regard. [¶] [COUNSEL FOR S.E.V.]: Okay. So we will receive a written minute order. THE COURT: Yes. [¶] [COUNSEL FOR S.E.V.]: Thank you."

The trial court's minute order, entitled "Ruling on Submitted Matter," was filed and served on August 22, 2011 and directed S.E.V. to file a proposed judgment. On September 1, 2011, the 10th day after the Ruling on Submitted Matter was served, S.E.V.

7

filed and served a document entitled, "Ex Parte Application and Motion to Correct and Clarify Statement of Decision . . ." which stated that S.E.V. could not "prepare a proposed Judgment pursuant to this Court's direction without clarification and correction of its Statement of Decision." Among other things, the motion sought a ruling on the complaint's first and eighth causes of action and stated that the trial court had miscalculated usury damages. At a September 8, 2011 hearing, the trial court noted that there had been no Code of Civil Procedure section 632 request for a statement of decision (it characterized S.E.V.'s motion as in the nature of a new trial motion) and ordered S.E.V. to prepare a judgment, which would start the clock running for any new trial motions.

S.E.V. subsequently filed a proposed judgment, to which Glendale objected on the grounds that it did not conform to the trial court's minute order. Glendale submitted its own proposed judgment. At the October 27, 2011 hearing on the competing judgments, the trial court rejected counsel for S.E.V.'s contention that the Motion to Correct and Clarify Statement of Decision was intended as statutory request for a statement of decision.

S.E.V. has cited no case, and our independent research has found none, that requires a trial court to construe a pleading not captioned "Request for Statement of Decision," as a request for such a statement. Particularly in light of the colloquy about a written statement of decision on the last day of trial, S.E.V.'s "Motion to Correct and Clarify Statement of Decision" was not sufficient to put the trial court on notice that S.E.V. was making a Code of Civil Procedure section 632 request for a statement of decision. The parties acquiesced that the trial court would issue a minute order not a statement of decision.

B.    *The Trial Court Correctly Calculated Usury Damages*

S.E.V. contends the trial court miscalculated its damages for Glendale's violation of the usury laws in relation to the First and Second Glendale Promissory Notes. They argue that the calculation should have also included the $75,500 "non-principal payment"

and $255,000 interest payments made to Glendale in connection with the First Glendale Promissory Note.  We disagree.

Usury (i.e. charging excessive interest on a loan) is forbidden by law.  The California Constitution, article 15, section 1 sets the highest rate of interest that may lawfully be charged at 10 percent per annum or 5 percent per annum plus the prevailing rate of the Federal Reserve Bank of San Francisco.  (*Roes v. Wong* (1999) 69 Cal.App.4th 375, 378.)  Additional payments to the lender (other than principal payments) are in effect a charge of additional interest and will render usurious a loan made at the maximum interest rate.  (*Bayne v. Jolley* (1964) 227 Cal.App.2d 630, 632.)

Any person who has paid more than the maximum rate may recover as damages "treble the amount of the money so paid . . . providing such action shall be brought within one year after such payment or delivery."  (Civ. Code, § 1916.12-3, subd. (a).)  This penalty is in addition to the debtor's entitlement to recoup interest paid during the preceding two years.  (*Whittemore Homes, Inc. v. Fleishman* (1961) 190 Cal.App.2d 554, 561; see also *Stock v. Meek* (1950) 35 Cal.2d 809, 817 [two-year statute of limitations set forth in Code Civ. Proc., § 339, subd. (1) applies to usury].)  Regarding application of the two-year statute of limitations, Miller and Starr explain:  "The [borrower] may recover all interest paid to the lender during the two years that preceded the filing of the complaint, but cannot recover interest paid during any period prior to two years preceding the filing of the action.  The two-year statute of limitations commences on the date of each interest payment, and the recovery is limited to the interest actually paid by the borrower . . . .  If no interest has been paid by the borrower, the remedy is limited to the cancellation of future interest."  (8 Miller & Starr, Cal. Real Estate (3d ed. 2011) § 21:37, pp. 159-160, fns. omitted.)

The S.E.V. plaintiffs contend additional usury damages are recoverable under the relation-back doctrine.  "The relation-back doctrine allows an amendment filed after the statute of limitations has run to be deemed filed as of the date of the original complaint ' "provided recovery is sought in both pleadings on the same general set of facts." ' [Citation.]  'In order for the relation-back doctrine to apply, "the amended complaint

9

must (1) rest on the same general set of facts, (2) involve the same injury, and (3) refer to the same instrumentality, as the original one." ' [Citation.]" (*Bridgeman v. Allen* (2013) 219 Cal.App.4th 288, 298.) In *Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1262, the court held that the relation-back doctrine did not apply because a survivor cause of action pleads a different injury than does a wrongful death cause of action. In *Bartalo v. Superior Court* (1975) 51 Cal.App.3d 526, the court held that a husband's loss of consortium claim did not relate back to the wife's claim for injuries sustained in a car accident. In *Kim v. Regents of University of California* (2000) 80 Cal.App.4th 160, 168-169, the court held that an age discrimination claim did not relate back to the filing of the original complaint for contractual overtime pay because the facts underlying the claims were logically separate and distinct. By contrast, in *Pointe San Diego Residential Community, L.P. v. Procopio, Cory, Hargreaves & Savitch, LLP* (2011) 195 Cal.App.4th 265, 277-278, the court held that the relation-back doctrine applied where the original form complaint for general negligence and the amended complaint detailing more specific acts of attorney malpractice arose out of the defendant-attorney's handling of the same case. The court explained, " 'The criterion of relation back is whether the original complaint gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one.' [Citation.]" (*Id*. at p. 279.)

Here, the record does not contain a copy of the original complaint. The operative first amended complaint did not include a usury claim based on either the First or Second Glendale Promissory Notes. Although it describes the terms of those notes, the complaint does not state the interest rate on either loan.[7] The record does not include a copy of Glendale's cross-complaint, so we do not know whether it states the interest rate on the First or Second Glendale Promissory Notes, but the 22nd affirmative defense in S.E.V.'s answer filed on April 4, 2011, states: "As an affirmative defense to all causes of action in the cross-complaint, these answering cross-defendants allege that any loan

---

[7]    Copies of the First and Second Esmaili Promissory Notes are attached to the complaint, but not copies of the First and Second Glendale Promissory Notes.

obligations alleged in the cross-complaint contained usurious interest rates not permitted by law." The evidence at trial established that both loans carried a 12 percent annual interest rate, which was usurious at the time. Thus, under *Bayne, supra*, the $75,500 and $45,000 "non-principal payments" were in effect charges of additional interest. On July 28, 2011, the last day of trial, the trial court granted S.E.V.'s motion to amend the complaint to include a usury cause of action. In its written closing argument, S.E.V. asserted that its usury damages included reimbursement of $375,000 (all interest paid in the two years before the original complaint was filed on February 27, 2009) plus treble damages of $405,000 (three times the $105,000 in interest paid in the one year before the original complaint was filed). Glendale's written closing argument focused on witness credibility and did not address the elements of any particular claim, including usury. In its "Ruling on Submitted Matter," the trial court concluded as follows on the usury claim:

> "The court awards judgment in favor of [Glendale] and against [S.E.V.] in the sum of $1,020,000, plus interest from the date of maturity or March 1, 2008 at the legal rate of 10 [percent] in the amount of $353,227.40. The court finds that the note was usurious in violation of California Constitution Article 15 Section 1 and that plaintiffs are entitled to reimbursement of the interest paid in the sum of $45,000.00 plus treble damages in the sum of $135,000.00 as a set off against the principal balance of $1,200,000.00 pursuant to Civil Code section 1916[.12]-3. The note is payable at maturity without the usurious interest but with interest at the legal rate from the date of maturity to judgment. [Citation.] The principal of the loan is unaffected. [Citation.]"

It appears undisputed that the reference to a $1.2 million dollar loan with a March 1, 2008 maturity date is to the Second Glendale Promissory Note. In its Motion to Correct And Clarify Statement of Decision, S.E.V. argued that the interest payments made in connection with the First Glendale Promissory Note should also be included in the calculation of usury damages. Glendale countered that the trial court correctly based usury damages on the $45,000 "non-principal payment" made in connection with the Second Glendale Promissory Note (the only interest payment made on that loan), since interest payments on the First Glendale Promissory Note were made more than two years before S.E.V. asserted its usury claim on April 4, 2011. In its reply, S.E.V. countered

11

that the relation-back doctrine should apply.  S.E.V. subsequently submitted a proposed judgment, which treated the usury claim as follows:

> ". . . [S.E.V. is] entitled to reimbursement of the interest paid during the two years preceding the action, pursuant to stipulation between the parties at trial, in the sum of $375,000.00 plus treble damages on the amount of interest paid during the year preceding the lawsuit in the additional sum of $405,000.00 pursuant to Civil Code [section] 1916-3.  Judgment for usury shall be in the aggregate sum of $780,500.00."

Glendale submitted its own proposed judgment which, as to the usury claim, stated:

> "The Court awards Judgment in favor of [Glendale] and against [S.E.V.] for Breach of Contract . . . in the sum of $1,020,000.00 plus interest of $353,227.40 minus the offset of $180,000 (for usury calculated as $45,000 in actual interest and treble damages in the amount of $135,000.00) for a total judgment of $1,193,227.40."

The trial court's final judgment awarded S.E.V. usury damages "in the amount of $180,000 [i.e. $45,000, plus three times $45,000] and further orders that the usurious interest rate on the note be reduced to 10 [percent] per annum."

We find no error in the trial court's calculation of usury damages.  It is undisputed that the $75,500 "non-principal payment" was made on February 27, 2007, when the First Glendale Promissory Note was executed; there is no evidence on what dates the $255,000 in interest payments were paid, but it is clear that they were paid on or before August 27, 2008, the date the First Glendale Promissory Note was replaced with the Second Glendale Promissory Note.  Therefore, the statute of limitation began to run on a usury claim arising out of those interest payments on February 27, 2007 for the $75,500 payment and no later than August 27, 2008 for the $255,000 in interest payments.  Although the original complaint was filed within two years (i.e. on February 20, 2009), the usury claim was not asserted until, at the earliest, S.E.V.'s answer to the cross-complaint filed on April 4, 2011, more than two years after August 27, 2008.  Contrary to S.E.V.'s argument, the relation-back doctrine does not apply to the usury claim because that claim did not involve the same injury as the fraud and breach of contract claims set forth in the original complaint.  Accordingly, the trial court correctly found S.E.V.'s

12

claim for usury damages based on the $75,500 and $255,000 interest payments time barred.**8**

C.      *Glendale Was Entitled to Prejudgment Interest on the Unpaid Principal of the Second Glendale Promissory Note From November 25, 2008*

S.E.V. contends the trial court erred in awarding prejudgment interest on the unpaid principal of the Second Glendale Note pursuant to *Epstein v. Frank* (1981) 125 Cal.App.3d 111 (*Epstein*).  S.E.V. makes two arguments:  (1)  *Epstein* was wrongly decided and (2) there was insufficient evidence that the Second Glendale Promissory Note was due and payable on March 1, 2008, five months before it was executed on August 27, 2008.  We find the first argument unpersuasive, but agree with the second.

In *Epstein*, the court held:  "The payee, notwithstanding the usury, has the right to recover the principal of the note in full on the date of its maturity.  If the obligor improperly withholds payment of this obligation it is neither unjust nor contrary to policy that he be chargeable with interest at the legal rate from the date he was obligated to pay the note until the date he discharges that obligation, or to the date a judgment is rendered against him." (*Epstein, supra,* 125 Cal.App.3d at p. 123.)  We find the *Epstein* court's analysis persuasive and adopt it here.  Accordingly, Glendale Investments was entitled to prejudgment interest on the $1.2 million balance of the Second Glendale Promissory note from date that note became due and payable.  However, as we shall explain, the trial court's finding that the note became due and payable on March 1, 2008, is not supported by substantial evidence.

The Second Glendale Promissory Note was introduced into evidence as Trial Exhibit 1165.  Dated August 27, *2008*, it recites the following terms:

---

**8**      We note that the evidence establishes that the $45,000 "non-principal payment" was made to Glendale through the closing of the Alessandro sale, which Esmaili testified occurred on August 27, 2008.  Although the $45,000 "non-principal payment" was made more than two years before the April 2011 filing of S.E.V.'s answer to the cross-complaint, the Glendale defendants do not appeal from the award of usury damages based on that amount.

13

"In installments as herein stated, for value received, I promise to pay to [Glendale Investments] . . . the principal sum of [$1.2 million] with interest from March 1, 2007 on unpaid balance at the rate of 12.00 [percent] per annum; principal and interest installments of interest only of $12,000 or more on the first day of each month, beginning the first day of April 2007 and continuing until March 1, 2008, at which time the entire unpaid principal balance, together with interest due thereon, shall become all due and payable."

Since the laws of physics make it impossible to agree to perform an act in the past, the note is ambiguous as to when the $1.2 million was due and payable. (See e.g., Com. Code, § 3113 [an instrument cannot be made "payable before the date of the instrument]".) Civil Code section 1657 provides: "If no time is specified for the performance of an act required to be performed, a reasonable time is allowed. If the act is in its nature capable of being done instantly--as, for example, if it consists in the payment of money only--it must be performed immediately upon the thing to be done being exactly ascertained." (See also *Hammond Lumber Co. v. Richardson Bldg. & Engineering, Co.* (1930) 209 Cal. 82, 88 ["The time of payment not being fixed, the presumption arises that it was due and payable immediately or on demand . . . ."].)

Here, because the date the parties intended the Second Glendale Promissory Note to become due and payable is not ascertainable from the note itself, it became due and payable on demand. Demand was made on November 25, 2008, the date of Glendale Investment's demand letter to the S.E.V. plaintiffs. Accordingly, we modify the judgment to award Glendale Investments prejudgment interest on the $1,020,000 unpaid balance of the $1.2 million dollar note from November 25, 2008, not from March 1, 2008.

D.      *New Trial Motion*

S.E.V. contends the trial court erred in denying its New Trial Motion. It argues that the trial court left material issues unresolved, including resolution of the first cause of action for conspiracy to commit fraud and eighth cause of action for a declaration of its rights and duties under the Second Glendale Promissory Note. We disagree.

The grounds for a new trial are wholly statutory and are set forth in Code of Civil Procedure section 657. One such ground is that the verdict is against the law. (Code Civ. Proc., § 657, subd. (6).) A decision is against the law if the trial court fails to make findings on issues that would have the effect of countervailing other findings. (*Schmeltzer v. Gregory* (1968) 266 Cal.App.2d 420, 422-423.)

We review an order denying a new trial for abuse of discretion. We do so by "examining the entire record and making an independent assessment of whether there were grounds for granting the motion. [Citation.]" (*ABF Capital Corp. v. Berglass* (2005) 130 Cal.App.4th 825, 832.)

Here, S.E.V. moved for a new trial on several grounds, only one of which it pursues on appeal: the decision was against the law because it did not resolve issues presented by the first and eighth causes of action. Following a hearing on January 24, 2012, the trial court denied the motion, without comment on the adequacy of the judgment vis-a-vis the first and eighth causes of action.

We find no error. In essence, the first cause of action for conspiracy to commit fraud alleged that the Glendale defendants made various misrepresentations to the S.E.V. plaintiffs for the purpose of conspiring to defraud S.E.V. of money. These representations included that, if S.E.V. carried back $1.9 million of the Alessandro purchase price and loaned Esmaili the $90,128 in closing costs, the proceeds of the Alessandro sale would be enough to pay off the First Glendale Promissory Note. The essence of the second cause of action for fraud was that the Glendale defendants induced S.E.V. to carry back $1.9 million of the Alessandro purchase price and to loan Esmaili the $90,128 closing costs, by falsely representing that he would repay those amounts. The trial court granted judgment in favor of S.E.V. against Aminpour and Emein for $110,000 and against Esmaili for $1.9 million and $90,128, on the second cause of action for fraud, but made no finding on the first cause of action for conspiracy to commit fraud. Since Aminpour and Emein were the co-owners of Glendale Investment, S.E.V. received all that it could have received in the first cause of action for conspiracy when it obtained judgment on its second cause of action. Since the damages alleged in the first and second

15

causes of action were the same, findings in favor of the S.E.V. plaintiffs on the first cause of action would not have the effect of countervailing any other findings. Therefore, the judgment was not against the law.

The eighth cause of action sought a declaration of the parties' rights and duties vis-a-vis the Second Glendale Promissory Note. In paragraph 5 of the judgment, the trial court states: "The court declines to order Judgment to either party on Plaintiff's eighth cause of action for Declaratory Relief." However, in paragraph 14 of the judgment, the court ordered judgment in favor of Glendale in the amount of $1,020,000 on the cross-complaint's eleventh cause of action for breach of the Second Glendale Promissory Note. Thus, contrary to S.E.V.'s contention, the trial court did not leave unresolved the parties rights and duties vis-a-vis the Second Glendale Promissory Note.

## DISPOSITION

Paragraph 14 of the judgment is modified and the trial court is directed to award prejudgment interest at the rate of 10 percent per annum from November 25, 2008. In all other respects, the judgment is affirmed.


RUBIN, J.

WE CONCUR:



BIGELOW, P. J.



GRIMES, J.


16